IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROBERT D. BAYSE, | :: | PRISONER CIVIL RIGHTS |
| Plaintiff, | :: | 42 U.S.C. § 1983 |
| | :: | |
| v. | :: | |
| | :: | |
| WARDEN A. HOLT et al., | :: | CIVIL ACTION NO. |
| Defendants. | :: | 1:17-CV-962-WSD-LTW |

## <u>NON-FINAL REPORT AND RECOMMENDATION</u>

Plaintiff is a state prisoner who, pro se, seeks relief under 42 U.S.C. § 1983 for alleged violations of her constitutional rights while she was confined at Phillips State Prison ("Phillips").[1] (Doc. 1.) The Court granted Plaintiff leave to proceed *in forma pauperis* and now must screen her complaint under 28 U.S.C. § 1915A.

## I.     The 28 U.S.C. § 1915A Standard

A federal court must screen a prisoner's complaint to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. Courts may dismiss a complaint if the alleged facts do not state a claim for relief that is plausible on its face. *Edwards v. Prime, Inc.*, 602 F.3d

---

[1] Because Plaintiff alleges that she is a transgender female and uses female pronouns to refer to herself, the Court will use those pronouns as well.

AO 72A
(Rev.8/82)

1276, 1291 (11th Cir. 2010). To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly showing that: (1) an act or omission deprived her of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the deprivation occurred under color of state law. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010).

## II.    Plaintiff's Claims[2]

Plaintiff claims relate to her confinement at Phillips from June 2016 to October 2016.[3] The claims fall into four categories: (1) harassment by some Phillips officers; (2) retaliation by some Phillips officers; (3) the warden's failure to protect her from some Phillips officers; and (4) deliberate indifference to her gender dysphoria.

Plaintiff is a transgender female with gender dysphoria. Plaintiff previously was at Phillips until January 2012. In 2011, two inmates raped Plaintiff at Phillips. At that time, Defendant Billings, Phillips' mental health director, and Defendant Best, Phillips' psychiatrist, refused to do anything about the rape other than increasing

---

[2] The factual allegations are taken from Plaintiff's complaint and presumed true for purposes of the § 1915A screening. *See Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2011); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

[3] When Plaintiff filed her complaint in February 2017, she was at Johnson State Prison. (Doc. 1 at 2, 5.) She did not state when she was transferred to that prison, but the latest date she referenced in her complaints about Phillips is October 27, 2016. (*Id.* at 11.)

2

Plaintiff's mental health medication. Also in 2011, Defendant Chaney, a unit manager at Phillips, made derogatory and degrading remarks to Plaintiff about her sexuality. Plaintiff was transferred to another prison on January 10, 2012.

On June 14, 2016, Plaintiff was transferred back to Phillips. Immediately upon arrival, during the intake process, Plaintiff informed Defendant B. Brown that she was a transgender female. Defendant B. Brown yelled out to others that Plaintiff was, in fact, a man, and Lieutenant Moore stated that Plaintiff had a penis. While taking Plaintiff to a housing unit, B. Brown and another officer continued to tell Plaintiff that she was a man because she had a penis and called her "faggot." (Doc. 1 at 4.)

Apparently the same day she arrived at Phillips – June 14, 2016 – Plaintiff filed a complaint under the Prison Rape Elimination Act ("PREA") regarding B. Brown's derogatory statements. Plaintiff also requested protective custody from Billings, Best, and Chaney given her problems with them five years earlier and her fear that "the same things would happen again or worse." (*Id.* at 7.) Plaintiff was placed in protective custody for approximately one month. Plaintiff complains that Defendant Holt, Phillips' warden, did not keep her in protective custody and allowed those three individuals to have access to her.

3

On June 16, 2016, B. Brown put handcuffs on Plaintiff too tightly while escorting her from her cell to the intake department.  When Plaintiff arrived at intake, another officer removed the handcuffs.  Later, B. Brown again put the handcuffs on too tightly, and another officer again loosened them.  On September 12, 2016, while Plaintiff was being moved to another cell, B. Brown forcibly removed Plaintiff's beaded toe rings and anklet and flushed those items down the toilet.

On July 20, 2016, Chaney started coming to Plaintiff's cell window and making "derogatory sexual and degrading comments about her gender identity."  (*Id.* at 8.) Plaintiff requested several times to Holt that Chaney be kept away from her, but her requests were not answered.

On September 8, 2016, while Plaintiff was out of her cell, Chaney and/or another officer removed Plaintiff's personal property.  That property included books, paper, writing instruments, legal mail, and other items Plaintiff used to make PREA complaints to the U.S. Department of Justice and others.  Plaintiff contends Chaney removed those items in retaliation for the PREA complaint she lodged against him a few weeks earlier.

On September 12, 2016, Chaney came to Plaintiff's cell and said "Thanks for the card, punk" and refused to allow Plaintiff to use the phone to call the PREA

4

hotline. (*Id.* at 9.) Chaney, knowing that Plaintiff's paper and writing instruments had been removed from her cell a few days earlier, told Plaintiff she had to write any PREA complaint. Plaintiff threw bleach at Chaney, who then cursed her, called her a "faggot ass bitch" and "dick sucking faggot," and threatened to sexually assault her. (*Id.*)

On October 3, 2016, Holt and Chaney came to Plaintiff's cell for inspection. Holt told Chaney, with Plaintiff present: "Go through that property and take out the legal mail, and get rid of it. Then, go through that cell and take whatever else you can find." (*Id.* at 10 (quotation marks omitted).) Plaintiff was then taken to a medical appointment. When she returned to her cell, all her property was missing. Chaney admitted to taking the property, told Plaintiff she was not getting it back, and told her she was not a female because she had testicles.

On October 4, 2016, Plaintiff asked Holt if she could write a letter to the Southern Poverty Law Center and the U.S. Department of Justice. Holt refused. On October 12, 2016, Holt told Plaintiff that she could write a letter only if a counselor observed her write it, read it, and allowed her to send it because Holt "did not want Plaintiff to report what was going on." (*Id.* at 11.) Plaintiff wrote a letter, which a female counselor read and allowed Plaintiff to send.

5

After her arrival at Phillips in June 2016, Plaintiff requested treatment for her gender dysphoria. Physician Sanford refused to see her, and physician Weaver, Phillips' clinical director, told her that no one at Phillips knew anything about treating gender dysphoria. Plaintiff received only hormone therapy and was told that Sanford does not perform gender reassignment surgery. Plaintiff seeks gender reassignment surgery, but did not state that such surgery is medically necessary or identify any other needed or desired treatment. (*See id.* at 4, 7-8, 10.)

## III.   Analysis

Plaintiff's complaint that some Phillips officers called her derogatory names and made degrading comments to her does not state a viable claim under § 1983. Verbal, non-physical harassment is not actionable under § 1983. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ."); *Edwards v. Gilbert*, 867 F.2d 1271, 1273 n.1 (11th Cir. 1989) ("[A] petitioner must allege more than that he has been subjected to verbal taunts . . . [h]owever distressing in order to make a claim that jailers have . . . deprived the petitioner of his constitutional rights." (quotation marks omitted)); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("[M]ere threatening

6

language and gestures . . . do not, even if true, amount to constitutional violations." (quotation marks omitted)); *see Goodman v. Kimbrough*, 718 F.3d 1325, 1333 (11th Cir. 2013) ("[N]ot every wrong that would be actionable at state or common law is cognizable as a constitutional tort under § 1983.").

Plaintiff's allegations regarding some of Defendants Holt and Chaney's statements, along with their actions, do state a viable claim of retaliation. To state such a claim, a plaintiff must allege facts plausibly showing that (1) her speech or act was constitutionally protected; (2) the defendant caused her to suffer an adverse action that would deter a person of ordinary firmness from engaging in such speech or act; and (3) the protected conduct and adverse action were causally connected. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

A prisoner's complaints about prison conditions or her allegedly wrongful treatment by prison officials are protected under the First Amendment. *See id.* ("It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement" and "an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints."). Plaintiff alleged that she complained to Phillips officials

7

and external agencies, both orally and in writing, about Chaney and other Phillips officials mistreating her and placing her in fear of harm. Those allegations sufficiently plead protected conduct.

Chaney's and Holt's alleged adverse actions and statements would deter a person of ordinary firmness from engaging in the protected speech in which Plaintiff allegedly engaged. Chaney allegedly removed Plaintiff's legal materials and all of Plaintiff's means for writing complaints on two occasions. Holt allegedly directed Chaney to take and dispose of those items on the second occasion and, one day later, allegedly told Plaintiff she could not send written complaints to the Southern Poverty Law Center or the U.S. Department of Justice. Later, Holt allegedly required Plaintiff to write any such complaints in the presence of a counselor and get the counselor's approval. Chaney also allegedly barred Plaintiff from using the phone to call the PREA hotline after disabling her from making written complaints. Those acts by Chaney and Holt, if true, were adverse acts that would deter a prisoner of ordinary firmness from making the complaints Plaintiff was making.

Plaintiff's allegations support a finding that the adverse acts were causally connected to Plaintiff's complaints. When he first took the legal materials from Plaintiff's cell, Chaney allegedly knew that Plaintiff had filed a PREA complaint

8

against him a few weeks earlier.  Indeed, Chaney allegedly referenced the complaint four days after taking the legal materials, removed Plaintiff's ability to make written complaints, and barred her from using the phone to make complaints.  Holt allegedly told Chaney to take Plaintiff's legal materials so that she could not write complaints and later told Plaintiff that he did not want her to report what was happening at Phillips.  Those allegations support a finding that Holt and Chaney engaged in the adverse acts because of Plaintiff's complaints about her treatment at Phillips. Plaintiff's retaliation claims should proceed against Holt and Chaney.

Plaintiff's allegation that Defendant B. Brown placed handcuffs on her too tightly on June 16, 2016 does not state a viable claim under § 1983.  *See Rodriguez v. Farrell*, 280 F.3d 1341, 1351-52 (11th Cir. 2002) (painful handcuffing, alone, does not constitute excessive force); *Gold v. City of Miami*, 121 F.3d 1442, 1446-47 (11th Cir. 1997) (holding that use of tight handcuffs that caused pain and skin abrasions constituted minimal force for which the plaintiff could not recover under § 1983).  Nor can she recover under § 1983 for B. Brown's alleged destruction of her toe rings and anklet on September 12, 2016.  The intentional deprivation of an individual's personal property is not actionable under § 1983 if a meaningful post-deprivation remedy is available under state law.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Georgia law

provides such a remedy – a cause of action for injuries to property, including "[a]ny deprivation of . . . possession." *See* O.C.G.A. §§ 51-10-1 through 51-10-6; *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (finding no constitutional violation because Georgia "has provided an adequate postdeprivation remedy" in O.C.G.A. § 51-10-1 (quotation marks omitted)).

Plaintiff's general complaint that Holt failed to protect her in 2016 from Chaney and others with whom she had trouble five years earlier does not state a viable claim. The Constitution requires officials who have custody of inmates to provide them with "reasonable safety." *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). To state a claim for deliberate indifference to her safety, an inmate must allege facts plausibly showing that: (1) she faced an objectively substantial risk of serious harm; (2) prison officials consciously disregarded that risk, i.e., were deliberately indifferent to her safety; and (3) there is a causal connection between the officials' deliberate indifference and the resulting harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

"Proof of deliberate indifference requires a great deal more than does proof of negligence," as prison officials must act with "conduct that is more than gross negligence." *Goodman*, 718 F.3d at 1332 (quotation marks omitted). Prison officials

10

are not deliberately indifferent if they fail to appreciate a substantial risk of harm to an inmate's safety of which they should have been aware; they must have actual knowledge of the risk and consciously disregard it. *Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Plaintiff's allegations do not support a plausible finding that Holt knew of a substantial risk of harm to Plaintiff's safety from any Phillips official. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014) ("[P]laintiff . . . must show more than a generalized awareness of risk and much more than mere awareness of . . . [another person's] generally problematic nature." (quotation marks omitted)). There is no allegation that Holt was at Phillips in 2011 or otherwise was aware in 2016 of the alleged problems Plaintiff had with officials in 2011. Even if Holt was aware, the allegations do not support a plausible finding that Plaintiff faced a substantial risk of harm upon her return to Phillips in 2016, as opposed to name-calling and verbal harassment.

Plaintiff's claim that physician Sanford was deliberately indifferent to her gender dysphoria also falls short. The standard applicable to a claim of deliberate indifference to a prisoner's medical needs is similar to that for deliberate indifference

11

to safety.  A prisoner must allege facts plausibly showing: (1) she had a serious medical need, which is one either diagnosed by a physician or that is so obvious a layperson would see the need for care; (2) a jail official was deliberately indifferent to that need; and (3) there is a causal connection between that indifference and the prisoner's injury.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). A defendant is deliberately indifferent only if he subjectively knew of a risk of serious harm and disregarded that risk with more than grossly negligent conduct. *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010).

Although she is receiving hormone therapy, Plaintiff wants gender reassignment surgery for her gender dysphoria.  There are no allegations, however, that the surgery is medically necessary for Plaintiff and, if it is, that anyone at Phillips knew that.  The allegations do not support a plausible finding that Sanford, or anyone at Phillips, consciously disregarded a known risk of serious harm to Plaintiff in denying her gender reassignment surgery.  Plaintiff has not sufficiently pled a claim for deliberate indifference to her medical needs.

## IV.   Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's retaliation claims against Defendants Warden A. Holt and Arthur Chaney be **ALLOWED TO**

12

**PROCEED**.  **IT IS FURTHER RECOMMEND** that Plaintiff's claim of deliberate

indifference to medical needs be **DISMISSED WITHOUT PREJUDICE** and that

Plaintiff's remaining claims and all remaining Defendants be **DISMISSED**.

   **SO RECOMMENDED**, this 25 day of May , 2017.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

13